UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KIMBERLY SCHOEBEL, on
behalf of herself and all similarly
situated people,

        Plaintiff,

v.                                                Case No.  8:15-cv-380-T-24 AEP

AMERICAN INTEGRITY
INSURANCE COMPANY
OF FLORIDA,

        Defendant.
_____/

## ORDER

       This cause comes before the Court on Defendant's Motion to Dismiss.  (Doc. No. 9). Plaintiff opposes the motion.  (Doc. No. 12).  As explained below, the motion is granted.

**I.  Standard of Review**

       In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id. at 1965 (citation omitted).  While the Court must assume that all of the allegations in the

complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II.  Background

Plaintiff Kimberly Schoebel alleges the following in her amended complaint (Doc. No. 7): Plaintiff worked for Defendant American Integrity Insurance Company of Florida as an insurance claims adjuster. Defendant routinely obtains and uses information in consumer reports to conduct background checks on prospective and existing employees.

On July 10, 2012, before Plaintiff started working for Defendant, she filled out Defendant's "Background Investigation Authorization" ("BIA") form. The BIA form states, in relevant part, the following:

> **Informed Consent and Release of Liability**
> I understand that in connection with my application for employment with American Integrity Insurance Group (hereafter referred to as the "Company") and, if hired, during my employment, a consumer report may be requested for employment purposes. All inquiries will be handled in compliance with applicable law including provisions of the Fair Credit Reporting Act, 15 U.S.C. Section 1681, et seq. I understand that the employment decision and my continued employment will be subject to the results of these inquiries. The report may include, but is not limited to, the following areas: verification of social security number; current/previous residences; employment history; education including transcripts; character references; credit history and reports when applicable; criminal records from any criminal justice agency in any/all federal, state and/or county, jurisdictions; motor vehicle records; and any other public records or to conduct interviews with third parties relative to

2

>my character, general reputation, or personal characteristics.
>
>I hereby waive any and all written notice of disclosure that may be required by applicable local, state or federal laws of my past and/or present employer(s), individuals, or institutions. In exchange for the consideration of my employment application, I hereby release and forever discharge, without reservation, the Company (including its directors, officers, employees, agents, contractors and subcontractors) and my past and/or present employers (their directors, officers, employees and agents) from any liabilities that may result from an investigation of my past and/or present employment or from the disclosure of any information. I further acknowledge that a facsimile or photocopy of this document will be valid as an original.
>
>**THIS INFORMED CONSENT AND RELEASE STATES THAT YOU KNOWINGLY AND VOLUNTARILY AGREE TO RELEASE CERTAIN PERSONAL RIGHTS. IT MAY BE ADVISABLE FOR YOU TO SEEK LEGAL COUNSEL PRIOR TO ENTERING INTO THIS AGREEMENT.**

(Doc. No. 7-1). Plaintiff signed and dated this BIA form.

Plaintiff was terminated from her employment with Defendant on October 25, 2013 (she does not contend that the background check led to her termination). However, on February 10, 2015, Plaintiff learned that Defendant had obtained a consumer report on her at some point from a company called ADP. After learning that Defendant had obtained a consumer report on her, Plaintiff filed this lawsuit, in which she asserts that Defendant violated the Fair Credit Reporting Act ("FCRA").

Plaintiff's amended complaint contains two counts. In Count One, she asserts that Defendant failed to properly disclose that it was obtaining her consumer report, in violation of 15 U.S.C. § 1681b(b)(2)(A)(i), because the BIA form did not consist solely of the FCRA disclosure. Instead, the BIA form also contained the paragraph releasing Defendant from liability resulting from the consumer report investigation. In Count Two, Plaintiff contends that Defendant

violated 15 U.S.C. § 1681b(b)(2)(A)(ii) of the FCRA by procuring her consumer report without proper authorization (due to the allegedly defective BIA form).

Plaintiff contends that Defendant's violations in both counts were willful. In support of this contention, Plaintiff alleges: (1) due to Defendant's placement of a release of liability within the BIA form, Defendant knew of its potential FCRA liability (which is precisely why it tried to avoid it); (2) Defendant consciously chose the release as its preferred means of attempting to avoid liability under the FCRA rather than complying with the FCRA's requirements; (3) Defendant is a large corporation with access to legal advice through its own general counsel's office and outside employment counsel, and there is no contemporaneous evidence that it determined that its conduct was lawful; (4) Defendant knew or had reason to know that its conduct was inconsistent with published FTC guidance interpreting the FCRA and the plain language of the statute; (5) Defendant voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless; and (6) the consumer reporting agency that provided Plaintiff's consumer report information to Defendant published numerous FCRA-related articles and compliance self-help materials made available to Defendant.

### III. Motion to Dismiss

In response to the amended complaint, Defendant filed the instant motion to dismiss. Specifically, Defendant argues that: (1) it did not violate the FCRA, and (2) its actions were not willful. As explained below, the Court finds that Plaintiff has not alleged a willful violation of the FCRA, and as such, the amended complaint must be dismissed.[1]

---

[1] The Court notes that Defendant also argues that Plaintiff's claims are time-barred. The Court does not need to analyze this argument, because the Court finds that dismissal is appropriate due the Court's conclusion that Defendant did not act willfully.

### A.  Violation of the FCRA

The FCRA provides the following guidance regarding the proper disclosure and authorization procedures for an employer to obtain a consumer report:

> [A] person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—(i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and (ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

15 U.S.C. § 1681b(b)(2)(A).  Plaintiff contends that because the BIA form contained the release (and thus, it did not consist solely of the FCRA disclosure), the BIA form violated the FCRA. Additionally, Plaintiff contends that because the BIA form was defective (due to it containing the release), Defendant did not properly obtain her consent to procure the consumer report, in violation of the FCRA.  Defendant responds that it did not violate the FCRA, because Defendant was allowed to put the release language in the BIA form and still comply with the FCRA.[2]

At the time that Plaintiff signed the BIA form in July of 2012, there was very little guidance regarding this FCRA provision.  At that time, there were four opinion letters written by Federal Trade Commission ("FTC") staff members.  The first opinion letter is dated October 21, 1997 and is written in response to Richard Steer's inquiry regarding whether the FCRA-required

---

[2] It appears that Plaintiff may also be claiming that Defendant violated the FCRA by including the FCRA disclosure within Defendant's application packet.  The Court rejects this argument, as the BIA form attached to the amended complaint is clearly a separate document from the application for employment.  The BIA form has a title on the top of the page (and the title is again listed on the bottom of the page), and the BIA form has a place for Plaintiff to sign and date the document.

disclosure document could also contain the consumer's authorization. See 1997 WL 33791227, at *1 (Oct. 21, 1997). The opinion letter states the following in response:

> While [the FCRA] states that the required disclosure that a consumer report may be obtained is to be made in a document that *consists solely of the disclosure*, we believe that the drafters did not intend to say that a disclosure statement should exclude the written authorization for procurement of a report . . . . Rather, we believe that it was the intent of the drafters to assure that the required disclosure appear conspicuously in a document unencumbered by any other information. The reason for specifying a stand-alone disclosure was so that consumers will not be distracted by additional information at the time the disclosure is given. We believe that including an authorization in the same document with the disclosure, as you suggest, will not distract from the disclosure itself; to the contrary, a consumer who is required to authorize procurement of the report on the same document will be more likely to focus on the disclosure. However, such a document should include nothing more than the disclosure and the authorization for obtaining a consumer report.
>
> In sum, it is the Federal Trade Commission staff's view that an employer can comply with . . . the FCRA by including the required disclosure statement in the same document with the required consumer authorization. We believe that by combining the two in a single document containing only the disclosure and authorization, it will be apparent to consumers that their signature, in fact, authorizes the employer to obtain a copy of their consumer report.
>
> The opinions set forth in this letter are those of the staff, and are not binding on the Commission.

Id. at *1-2.

The second opinion letter is dated December 18, 1997 and is written in response to Harold Hawkey's inquiry regarding the appropriate form of the FCRA-required disclosure. See 1997 WL 33791224, at *1 (Dec. 18, 1997). The opinion letter states the following in response: "[A]n employer may continue to include in the employment application a disclosure that a consumer report may be procured and provide a place for the consumer's written consent.

However, an employer that follows this procedure must also clearly and conspicuously disclose in a completely separate document that a consumer report may be obtained for employment purposes . . . ." Id. (emphasis in original). The opinion letter contains a footnote to this statement, which provides the following:

> Nothing else may appear on the document that detracts from the disclosure required by [15 U.S.C. § 1681b(b)(2)(A)]. An employer may elect to obtain the consumer's authorization on that document, because that would focus the consumer's attention on the disclosure and thus further the purpose intended by the separate document provision of this section.

Id. at *3 n.3 (quotation marks omitted). This opinion letter closed with the statement that "[t]he above views constitute informal staff opinions and are advisory in nature and not binding on the Commission." Id. at *3.

The third opinion letter is dated June 12, 1998 and is written in response to Richard Hauxwell's inquiry regarding the appropriate form of the FCRA-required disclosure. See 1998 WL 34323756, at *1 (June 12, 1998). The opinion letter stated the following in response:

> [I]t is our position that the disclosure notice and the authorization may be combined. If they are combined, identifying information (such as date of birth, Social Security number, driver's license number, and current and former addresses) may be included in the form. However, the form should not contain any extraneous information.
>
> While we believe that you may combine the disclosure and authorization (and include identifying information) as you have in the draft form that you included with your letter, we note that your draft disclosure includes a waiver by the consumer of his or her rights under the FCRA. The inclusion of such a waiver in a disclosure form will violate [15 U.S.C. § 1681b(b)(2)(A)] of the FCRA, which requires that a disclosure consist solely of the disclosure that a consumer report may be obtained for employment purposes. Moreover, it is a general principle of law that benefits provided to

7

>   citizens by federal statute generally may not be waived by private agreement unless Congress intended such a result. Brooklyn Savings Bank v. O'Neill, 324 U.S. 697 (1945). We note that no authorization for a waiver is contained in the FCRA; nor does the legislative history show that Congress intended that consumers should be able to sign away their legal rights under the Act. Accordingly, employers and other users of information covered by the FCRA may not require consumers to waive their rights under the law.

Id. (quotation marks omitted). This opinion letter closed with the statement that "[t]he views that are expressed above are those of the Commission's staff and not the views of the Commission itself." Id. at *3.

The fourth opinion letter is dated September 9, 1998 and is written in response to H. Rowan Leathers' inquiry regarding whether the FCRA-required disclosure can be part of the employment application.[3] The opinion letter stated the following in response:

>   The disclosure may not be part of an employment application, because the language you quote is intended to ensure that it appears conspicuously in a document not encumbered by any other information. The reason for requiring that the disclosure be in a stand-alone document is to prevent consumers from being distracted by other information side-by-side with the disclosure. A disclosure that is combined with many items in an employment application -- no matter how "prominently" it appears -- is not "in a document that consists solely of the disclosure" as required by [15 U.S.C. § 1681b(b)(2)(A)].

This opinion letter closes with the statement that "[t]he opinions set forth in this informal letter are not binding on the Commission."

Based on the above opinion letters, it is the view of FTC staff members that the FCRA-required disclosure must be set forth in a document that contains only the disclosure and may

---

[3]This opinion letter can be found online at: https://www.ftc.gov/policy/advisory-opinions/advisory-opinion-leathers-09-09-98.

also contain the consumer's authorization. The reason for setting this information out on its own in a separate document is so that consumers will not be distracted by additional information at the time the disclosure is given.

The first case published on WestLaw to address the issue of whether release language may be contained within an FCRA-required disclosure form was <u>Singleton v. Domino's Pizza, LLC</u>, 2012 WL 245965, at *1 (D. Md. Jan. 25, 2012). In <u>Singleton</u>, the court stated that the inclusion of a liability release in the disclosure form violated the FCRA because the form included information beyond the FCRA disclosure itself. <u>See id.</u> at *7-8. The court rejected the defendant's argument that disclosure document can contain more than just the FCRA-required disclosure, because the statute provides that the document can also contain the consumer's authorization. <u>See id.</u> at *8. In rejecting this argument, the <u>Singleton</u> court stated:

> [The defendant's] contention, however, ignores the significance of congressional silence on an issue where Congress has otherwise spoken. Indeed, when mandating that an employer use a document that "consists solely of the disclosure," Congress *expressly* permitted employers to include language authorizing the employer to procure the consumer report. Had Congress intended for employers to include additional information in these documents, it could easily have included language to that effect in the statute. It did not do so, however, and its "silence is controlling." . . . Ultimately, both the statutory text and FTC advisory opinions indicate that an employer violates the FCRA by including a liability release in a disclosure document.

<u>Id.</u> at *8-9 (internal citations omitted).

Later that same year, another court came to a different conclusion on the same issue. <u>See</u> <u>Smith v. Waverly Partners, LLC</u>, 2012 WL 3645324, at *6 (W.D. N.C. Aug. 23, 2012). In <u>Waverly</u>, the disclosure form contained a liability release, and the court concluded that the FCRA-required disclosure was adequate, stating:

> [I]n order to give Congress's inclusion of the word "solely" meaningful effect, the Court agrees that inclusion of the waiver provision was statutorily impermissible and that the waiver is therefore invalid. However, while invalid, the waiver—a single sentence within the authorization, which was kept markedly distinct from the disclosure language—was not so great a distraction as to discount the effectiveness of the disclosure and authorization statements. Accordingly, the disclosure and authorization are otherwise adequate.

Id.

After Waverly and Singleton, there is a split of authority on this issue. Many courts agree with the Singleton court and conclude that if the disclosure form contains a release, there is an FCRA violation. See Reardon v. Closetmaid Corp., 2013 WL 6231606, at *9 (W.D. Pa. Dec. 2, 2013); Miller v. Quest Diagnostics, 2015 WL 545506, at *3 (W.D. Mo. Jan. 28, 2015)(denying motion to dismiss FCRA claim given that the disclosure form contained a release and other extraneous information); Milbourne v. JRK Residential America, LLC, 2015 WL 1120284, at *7-8 (E.D. Va. Mar. 11, 2015)(denying the defendant's "motion for summary judgment on the theory that its authorization form satisfies 'the letter and spirit of the FCRA'"); Speer v. Whole Food Market Group, Inc., 2015 WL 1456981, at *3 (M.D. Fla. Mar. 30, 2015); Lengel v. HomeAdvisor, Inc., 2015 WL 2088933, at *8 (D. Kan. May 6, 2015)(denying motion to dismiss FCRA claim given that the disclosure form contained a release and other extraneous information). However, one court seemed to avoid directly deciding the issue by stating that because the case was "[a]t the motion to dismiss stage, where all inferences are made in favor of the non-movant, the Court [was] unwilling to conclude that [the plaintiff] has not stated [an FCRA] claim." Avila v. NOW Health Group, Inc., 2014 WL 3537825, at *2 (N.D. Ill. July 17, 2014). Finally, one court concluded that given the divergent positions taken by courts on the

issue of whether an FCRA-required disclosure form may contain a release, the court could not conclude that the defendant's position was erroneous. See Syed v. M-I LLC, 2014 WL 4344746, at *3 (E.D. Ca. Aug. 28, 2014).

After considering the above case law, the Court agrees with Singleton and the line of cases that have found that if the disclosure form contains a release, there is an FCRA violation. While the Court agrees that Defendant's interpretation complies with the spirit and purpose of the FCRA's disclosure requirements, the Court agrees with Plaintiff that Defendant has committed a technical violation of the statute.

### B.  Willfulness

As stated above, the Court concludes that Defendant's BIA form violates the FCRA. However, in order for Plaintiff to state a claim for a violation of the FCRA in this case, she must also allege that Defendant's violation was willful (since she does not allege actual damages and only requests statutory and punitive damages). 15 U.S.C. § 1681n(a). The Supreme Court has addressed the issue of willfulness in relation to FCRA violations. See Safeco Ins. Co. of America v. Burr, 551 U.S. 47, 69-70 (2007).

In Safeco, two provisions of the FCRA were implicated: (1) the FCRA requires notice to a consumer subjected to an adverse action based on information contained in a credit report; and (2) in the context of insurance companies, an adverse action includes an increase in any charge for insurance. See id. at 52-53. One of the issues in Safeco was whether an insurance company (Safeco) willfully violated the FCRA when it failed to notify consumers who were applying for insurance for the first time with Safeco that their insurance rates would have been lower if their credit reports were not considered. See id. at 55. Thus, the Court addressed three sub-issues.

First, the Court addressed whether there can even be an increase in an insurance rate for a first-time insurance applicant (since there is no prior benchmark to compare the rate to), and the Court concluded that there could be an increase for first-time applicants. See id. at 62-63. Second, the Court addressed how a credit report could adversely affect insurance rates. See id. at 65. The Court concluded that a credit report adversely affects insurance rates when the insurance rate given is higher than the rate that would have been given if the insurance company had not considered the applicant's credit report. See id.

Third, the Court addressed whether Safeco willfully violated the FCRA if the plaintiffs received higher rates based on consideration of their credit reports, but Safeco did not give them the statutorily required notice because Safeco erroneously believed that the notice requirement did not apply to first-time applicants. See id. at 68. In finding that Safeco did not act willfully as a matter of law, the Court first stated that willfully under the FCRA means to act recklessly. See id. at 57-58. The Court went on to explain:

> [A] company subject to [the] FCRA does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.
>
> Here, there is no need to pinpoint the negligence/recklessness line, for Safeco's reading of the statute, albeit erroneous, was not objectively unreasonable. As we said, § 1681a(k)(1)(B)(i) is silent on the point from which to measure "increase." On the rationale that "increase" presupposes prior dealing, Safeco took the definition as excluding initial rate offers for new insurance, and so sent no adverse action notices to [the plaintiffs]. While we disagree with Safeco's analysis, we recognize that its reading has a foundation in the statutory text, and a sufficiently convincing justification to have persuaded the District Court to adopt it and rule in Safeco's favor.
>
> This is not a case in which the business subject to the Act had the

12

> benefit of guidance from the courts of appeals or the Federal Trade Commission (FTC) that might have warned it away from the view it took. Before these [consolidated appeals], no court of appeals had spoken on the issue, and no authoritative guidance has yet come from the FTC (which in any case has only enforcement responsibility, not substantive rulemaking authority, for the provisions in question). Given this dearth of guidance and the less-than-pellucid statutory text, Safeco's reading was not objectively unreasonable, and so falls well short of raising the "unjustifiably high risk" of violating the statute necessary for reckless liability.

Id. at 69-70 (internal citations omitted). The Safeco Court noted that there was an FTC staff opinion letter on the issue, "[b]ut the letter did not canvass the issue, and it explicitly indicated that it was merely 'an informal staff opinion . . . not binding on the Commission.'" Id. at 70 n.19. Additionally, the Safeco Court stated:

> Where, as here, the statutory text and relevant court and agency guidance allow for more than one reasonable interpretation, it would defy history and current thinking to treat a defendant who merely adopts one such interpretation as a knowing or reckless violator. Congress could not have intended such a result for those who followed an interpretation that could reasonably have found support in the courts . . . .

Id. at 70 n.20.

Applying Safeco's framework to the instant case, this Court concludes that Defendant did not willfully violate the FCRA, because it's interpretation of the FCRA—that the FCRA allowed a release within the disclosure document—was not objectively unreasonable. At the time that Plaintiff signed the BIA form, the only authority that existed was: (1) the statute at issue, (2) four non-binding FTC staff opinions, and (3) one non-binding federal district court case from the District of Maryland (Singleton).

At first glance, the statute seems straightforward—an employer may procure a consumer report if it makes "a clear and conspicuous disclosure" in writing "in a document that consists

13

solely of the disclosure, that a consumer report may be obtained for employment purposes." 15 U.S.C. § 1681b(b)(2)(A)(i). According to that portion of the statute, it would appear that the disclosure document could only contain one sentence: Employer hereby notifies you that a consumer report on you may be obtained for employment purposes. Clearly, "solely" in the statute does not actually mean that the disclosure sentence is the only information that can be contained in the disclosure document, as the FCRA provides that the disclosure document may also contain the consumer's written authorization to the procurement of a consumer report. 15 U.S.C. § 1681b(b)(2)(A)(ii). Furthermore, the Hauxwell FTC opinion letter explicitly stated that other information, such as date of birth, Social Security number, driver's license number, and current and former addresses, may be included in the disclosure form. 1998 WL34323756, at *1.

Additionally, the Court notes that the FTC opinion letters are not binding authority on the courts, and they are not even binding on the FTC. However, the opinion letters are persuasive authority, and they explain that the reason for setting the disclosure information out on its own in a separate document is so that consumers will not be distracted by additional information at the time the disclosure is given. The release language contained in Defendant's BIA form is directly related to the FCRA disclosure and does not detract from the required disclosure language. While the Court agrees that the release language should not have been included, the Court finds that the BIA form is consistent with the spirit of the FCRA to ensure that the FCRA disclosure is clear and conspicuous and in its own FCRA document.

Finally, the Court notes that at the time that Plaintiff signed the BIA form, there was no appellate case law on the issue, nor was there any case law within the Eleventh Circuit. Instead, there was only one non-binding case on point, Singleton. Thereafter, the case law on the issue of

14

the inclusion of release language within the FCRA-required disclosure is inconsistent at best. Given the above, the Court concludes that Defendant's use of the BIA form, while an FCRA violation, was not a *willful* violation, because it was not based on an objectively unreasonable interpretation of the statute.

This conclusion is consistent with Syed v. M-I LLC, 2014 WL 5426862 (E.D. Cal. Oct. 23, 2014)("Syed II"). In Syed II, on July 20, 2011, the plaintiff executed the defendant's FCRA disclosure form, which contained a release. See id. at *1. The court found that the defendant did not willfully violate the FCRA, stating:

> Plaintiff alleges that [the defendant's] interpretation of the FCRA to permit the inclusion of release and indemnity language in the disclosure form was "objectively unreasonable," and supports this allegation by pointing to the "plain and clearly ascertainable" statutory language as well as three FTC opinion letters and several district court opinions on the subject.
>
> This court previously rejected plaintiff's contention that the FCRA's language is as clear as he claims. The relevant portion of § 1681b(b) requires that the document "consists solely of the disclosure." But the immediately following subsection allows the consumer's authorization to "be made on the document referred to in clause (i)"—that is, the same document as the disclosure. Thus, the statute itself suggests that the term "solely" is more flexible than at first it may appear. This "less-than-pellucid" statutory language weighs in favor of finding that [the defendant's] interpretation was objectively reasonable.
>
> The next relevant question becomes whether, at the time [the defendant] used the form, "guidance from the courts of appeals or the Federal Trade Commission . . . warned it away from the view it took." But direction from the FTC must be "authoritative guidance." For instance, the Safeco Court rejected the use of an informal letter written by an FTC staff member because it "did not canvass the issue" and "explicitly indicated it was merely 'an informal staff opinion . . . not binding on the Commission.'"
>
> Just like the letter rejected by the Supreme Court in Safeco, all three letters cited for support by plaintiff explicitly indicate they are

>informal staff opinions. These letters lack the authority needed to support plaintiff's allegation post-<u>Safeco</u>.
>
>The district court opinions cited by plaintiff also cannot support his position because all of the decisions were issued after [the defendant] used its form in 2011. These cases could not have warned [the defendant] away from the view it took under the <u>Safeco</u> standard if they had not yet come into existence.
>
>None of the legal authority cited by plaintiff suffices to make [the defendant's] understanding of its obligation under the FCRA at the relevant time objectively unreasonable. Given this "dearth of authority" and the "less-than-pellucid" statutory text, the court finds no support for plaintiff's allegation of willfulness and it must grant [the defendant's] motion to dismiss.

<u>Id.</u> at *3-4 (internal citations omitted).

Accordingly, the Court concludes that Defendant's use of the BIA form, while an FCRA violation, was not a *willful* violation, because it was not based on an objectively unreasonable interpretation of the statute. As such, Plaintiff's FCRA claims fail, and her complaint must be dismissed.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that Defendant's Motion to Dismiss (Doc. No. 9) is **GRANTED**. The Clerk is directed to enter judgment in favor of Defendant, terminate all pending motions, and **CLOSE** this case.

**DONE AND ORDERED** at Tampa, Florida, this 27th day of May, 2015.

Copies to:
Counsel of Record

SUSAN C. BUCKLEW
United States District Judge